(76 South. 973)

HERZFELD v. HAYNE et al. (7 Div. 897.)

(Supreme Court of Alabama. Nov. 29, 1917.)

1. CONTRACTS ⬤—93(2)—EXECUTION—FAILURE TO READ—EFFECT.

When one who can read and write executes or receives an instrument, he is, in the absence of misrepresentation, fraud, or deceit, bound by it, and the fact that he did not read it or was ignorant of its contents is no defense, for he should have read it, or have made proper inquiry as to its contents, and, failing to do so, must take the consequences.

⬤—For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. CONTRACTS ⬡⟹94(4)—EXECUTION—FAILURE TO READ—EFFECT.

The mere fact that a party to a contract had an opportunity to read it before signing does not bind him to the terms of a contract which he did not intend to make, and which he was led to make by the fraud or deceit of the other party.

3. BILLS AND NOTES ⬡⟹115 — RIGHTS OF MORTGAGEE OF CROP.

Where a mortgagor of cotton was induced by his vendor of the land to sign notes creating a lien on the cotton for rent under the mistaken apprehension that he merely signed notes for the purchase price of the land, such defense would be available both to him and to the mortgagee of the cotton.

4. ATTACHMENT ⬡⟹308(3)—EVIDENCE—ADMISSIBILITY.

Where the vendor of land claimed a lien as for rent on the cotton raised thereon, and sought attachment, the claimant of the cotton under a chattel mortgage from the vendee of the land could introduce evidence tending to show nonexistence of the relation of landlord and tenant between the vendor and the mortgagor.

5. CHATTEL MORTGAGES ⬡⟹138(1)—PRIORITY.

Where a vendor of land sought attachment on cotton raised thereon under a note giving a lien as for rent, in the absence of evidence establishing the relation of landlord and tenant between the vendor and purchaser, the chattel mortgagee of the cotton should prevail.

6. CHATTEL MORTGAGES ⬡⟹138(3)—PRIORITY.

Code 1907, § 4753, authorizing reasonable satisfaction for the use and occupation of land in certain instances, does not give a vendor of land, who obtained notes providing for a lien as for rent on default of payment of installments of the purchase price, a lien prior to that of the chattel mortgagee of a crop raised on the land.

Appeal from City Court of Talladega; Marion H. Sims, Judge.

Attachment by H. Herzfeld against Isaac Hayne, wherein Miner J. Cliett filed a claim suit. Judgment for claimant, and plaintiff appeals. Transferred from the Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

This case was commenced by an attachment by H. Herzfeld, which was sued out against one Isaac Hayne, and levy was made on three bales of cotton in a warehouse at Childersburg, Ala., showing the levy by the numbers of the warehouse receipts and the weights. The claimant, Miner J. Cliett, filed a claim suit for the cotton on the 1st of May, 1916. The case coming on to be tried, the plaintiff filed a complaint alleging that the property attached and claimed was the property of the defendant Isaac Hayne, and subject to the seizure and satisfaction of the writ of attachment issued in the cause; that the cotton described was the cotton of Isaac Hayne, and was subject to the writ of attachment on the alleged lien of Herzfeld as landlord. All the evidence introduced was introduced by the plaintiff, and none by the claimant. The cause was tried before the court without a jury. The witnesses were examined orally before the court, and judgment was rendered in favor of the claimant, from which judgment the plaintiff prosecutes this appeal.

Jacob A. Walker, of Opelika, for appellant. Knox, Acker, Dixon & Stewart, of Talladega, for appellees.

GARDNER, J. One Isaac Hayne had leased from the plaintiff (appellant here) a certain tract of land for a period of several years, including the year 1915; but on February 6, 1915, these parties made a new arrangement whereby the plaintiff sold to said Hayne the said tract of land, executing a bond for title, which recited the purchase money to be $1,000, payable in installments of $200 per year, with interest; the first note falling due November 1, 1915. There was nothing in this bond for title which provided that plaintiff had any kind of lien in case of the failure to meet any of the notes, or that there should be any change in the relationship of vendor and vendee.

Plaintiff introduced a note for $200, executed in February, 1915, due November 1, 1915, which appears in the usual form, but discloses in its conclusion that it is for a part of the purchase money for the land, concluding as follows:

"And should I fail to pay this note, I agree to pay fifteen hundred pounds lint cotton as rent, per my note of September 9, 1913."

The note was signed by said Hayne. Hayne, as a witness for the plaintiff, testified that he signed the notes which were described in the bond for title. These notes as described in the bond for title indicate only the amount with the date of payment, and the fact they were to bear interest. Hayne further testified that he did not read the notes, although he could "read a little," but signed the papers relying upon what the plaintiff said about them; that plaintiff wrote the papers out, read the bond over to him, but did not read the notes, stating that the notes were simply those called for in the bond, and said nothing about there being any rent contained therein. This witness further testified that the plaintiff told him in the event of his failure to pay the $200 in the fall he could pay the interest, and would be granted an extension, and that this was a part of the agreement when he purchased the place. Witness further testified that after the note was due plaintiff agreed that the same could be paid in lumber—the witness at that time was running a sawmill—but that plaintiff never ordered the lumber. Just after the contract of sale for the land was entered into, the said Hayne executed to the claimant a mortgage on the crops to be grown thereon during the year 1915 for advances for that year; the three bales of cotton here involved constituting a part of said crop.

[1, 2] The rule is of course universally recognized that when one who can read and

write executes or receives an instrument, he is, in the absence of misrepresentation, fraud, or deceit, bound by it, and the fact that he did not read it or was ignorant of its contents is no defense, for he should have read it, or have made proper inquiry as to its contents, and, failing to do so, must take the consequences. The rule, however, is otherwise when the execution of an instrument is obtained by misrepresentation of its contents, and the party signs a paper he did not know he was signing, and did not really intend to sign. It is immaterial, under such circumstances, that he had the opportunity to read the paper, for he may have been prevented from doing so, or from making inquiry as to its contents, by the very fact that he trusted to the truth of the representation made by the other party with whom he was dealing, who undertook to give the information of the contents of the paper on which he relied and acted. He may therefore show what the real contract was. Bank of Guntersville v. Webb & Butler, 108 Ala. 132, 19 South. 14.

[3] As between the plaintiff and the vendee, Hayne, we are persuaded the evidence is sufficient to justify the conclusion that the execution of the note by Hayne comes within the rule just referred to as to misrepresentations, concerning the contents of the note which he was called upon to sign, and that Hayne would be permitted to interpose such defense in an action between himself and the plaintiff. The claimant obtained his rights through Hayne, and we are also persuaded that, under the circumstances here shown, he may also avail himself of this defense on the evidence which was introduced by the plaintiff without objection, and which, indeed, the plaintiff did not contradict when on the stand.

[4, 5] In order for the plaintiff to be entitled to recover it is necessary that he establish a lien superior to the title acquired by the claimant's mortgage, and to the establishment of this lien in the instant case the relation of landlord and tenant was essential to be shown. Clearly, therefore, the evidence which tended to show the nonexistence of this relationship is entirely proper in this action, and may be availed of by the claimant. Samuel Gans & Co. v. Tyson, 170 Ala. 513, 54 South. 237; B. & Am. Mortgage Co. v. Cody, 135 Ala. 622, 33 South. 832; Aderhold v. Blumenthal & Beckert, 95 Ala. 66, 10 South. 230; Dryer v. Abercrombie, 57 Ala. 497. The relation between plaintiff and defendant was that of vendor and vendee, with no binding provision which would create the relation of landlord and tenant (McLellan v. Roberson, 171 Ala. 120, 55 South. 99; Mecklin v. Deming, 111 Ala. 159, 20 South. 507), and therefore the mortgage of claimant should prevail.

[6] Subdivision 4 of section 4753 of the Code of 1907 is without application here, as there is no contention that Hayne entered into possession unlawfully; nor do we find that any other provisions of section 4753, Code, have any bearing upon the result of this cause. The relation of landlord and tenant, either express or implied, was essential to the establishment of the lien. Nelson v. Webb, 54 Ala. 436. The testimony of Hayne tended to show that no such agreement existed, and was not a part of the contract of purchase.

Without regard therefore to any other questions presented by this record, we are of the opinion the conclusion of the court below upon this question of fact is fully justified by the evidence, and that the judgment should be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.